```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
GURAMRIT HANSPAL,
```

                    Plaintiff,           **MEMORANDUM AND ORDER**
                                                                      2:18-cv-3875 (DRH)(ARL)

      - against –

JASON EPSTEIN and DIAMOND RIDGE
PROPERTIES,

                    Defendants.
```
--------------------------------------------------------X
```

**APPEARANCES**

**OFFICE OF ROBERT J. ZYSK**
Attorney for Plaintiff
155 Bellport Ave.
Medford, NY 11773
By:    Robert J. Zysk, Esq.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Attorney for Defendants
280 Park Ave., 15th Floor West
New York, NY 10017
By:    Alan F. Kaufman, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

       Plaintiff Guramrit Hanspal ("Plaintiff") brought this action against Defendants Jason Epstein ("Epstein") and Diamond Ridge Properties (collectively with Epstein, "Defendants") for civil conspiracy to commit fraud, prime facie tort, conspiracy to violate Plaintiff's due process rights, and violations of Plaintiff's civil rights arising out of a foreclosure dispute. Plaintiff also seeks an injunction against both Defendants.

       Presently before the Court is Defendants' motions to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim. For the reasons explained below,

the motion to dismiss is granted as to all claims and Plaintiff's requests for default judgment and sanctions are denied.

## BACKGROUND

The following relevant facts come from the Complaint and are assumed true for purposes of the instant motion to dismiss:

This action was originally filed in the Supreme Court of the State of New York on June 12, 2018. (Compl. [ECF No. 1-1] at 1.) Defendants removed the action to Federal Court on July 5, 2018 by Notice of Removal. (Notice of Removal [ECF No. 1] at 1.). Plaintiff alleges that Defendants conspired with J.P. Morgan Chase Bank, N.A. ("Chase") and "Remax Central Realty" ("Remax")[1] to illegally seize and sell his house, located at 2463 Kenmore Street, East Meadow, New York ("Property"). (Compl. ¶ 2.) The Property was sold by Chase to Defendants at less than half the market value on May 28, 2018. (*Id.*) Plaintiff attests that the market value of the Property is $600,000. (*Id.* ¶ 1.) Defendant Epstein then sent Plaintiff a letter after May 28, 2018 and before June 12, 2018, making Plaintiff a one-time offer "to take this matter to the finish line" if he would vacate the premises. (*Id.* ¶ 7.) These statements are effectively the extent of the facts alleged in the Complaint. Plaintiff does, however, include a fair amount of language that is not particularly illuminating or instructive, such as his assertion that "Epstein is cock sure that he literally stole the Plaintiff's residence, illegally[,] and has visions of sugar plums dancing in his head when he contemplates his anticipated ill-gotten gains." (*Id.* ¶ 7.)

Plaintiff also references two cases pending in Nassau County Supreme Court, namely, a "fraud cause of action" against Chase and a separate case against Chase for "fraudulent representations to the Court[.]" (*See, e.g., id.* ¶¶ 2, 3.) There are no further details regarding

---

[1] The Court believes that Plaintiff is referring to Re/Max, LLC, but will use the spelling that Plaintiff has provided.

these pending actions, or what relevance they have, if any, to the instant action. Likewise, there is no mention in the Complaint of the date or nature of the original foreclosure proceeding by which Chase and/or Remax seized the Property.[2]

On August 16, 2018, the Court held a telephone conference regarding: (1) relating this case to another case in federal court, case no. 18-CV-295, that concerns the same Property; (2) insufficient service of process; (3) an extension of time for Plaintiff to reply to the Notice of Removal; and (4) Defendants' request for leave to file a motion to dismiss. The following determinations were made: (1) the Court declined to relate the cases based on the information presented at the time of the telephone conference; (2) Plaintiff did not dispute that he failed to personally serve either Defendant in compliance with Fed. R. Civ. P. 4 and N.Y. C.P.L.R. §§ 308, 310; (3) Plaintiff's request for an extension of time to respond to the Notice of Removal was granted; and (4) the request to file a motion to dismiss was denied with leave to renew pending resolution of the issue of service of process. Plaintiff was also given an opportunity during the telephone conference to amend his Complaint, with Defendants' consent, which he declined.

---

[2] Defendants give a much broader history of this case and the foreclosure case that preceded it in their Motion to Dismiss papers. Defendants assert that Plaintiff executed a Note and Mortgage on the Property in 1998 for $232,000. (Mem. in Supp. at 3.) Defendants further claim that Plaintiff immediately defaulted on the Note, and in May 2000 the Nassau County Supreme Court entered a Judgment of Foreclosure and Sale. (*Id.*) Defendants state that the Nassau County District Court entered a judgment against Plaintiff in eviction proceedings awarding possession of the Property to Chase in February 2011 and again in May 2018. (*Id.* at 5.) There is also some question of whether Plaintiff improperly transferred the Property to another person after the Judgment of Foreclosure and Sale. (*Id.* at 4.) Finally, Defendants allege that Plaintiff was threatened with sanctions in the state court actions for his frivolous requests for judicial intervention.

As this is a motion to dismiss, the Court may not consider Defendants' factual submissions. "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). "Courts generally may not consider affidavits and exhibits submitted in connection with a Rule 12(b)(6) motion to dismiss." *Turner v. Procopio*, 2016 WL 7186488, at *3 (W.D.N.Y. Dec. 12, 2016) (citing *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 1999)).

On August 22, 2019, Defendants filed a letter indicating that they were waiving objections to Plaintiff's defective service. (Letter [ECF No. 11] at 1.) On August 27, 2019, Plaintiff filed his objections to the Notice of Removal as well as his request to remand. On November 2, 2018, the Court filed an Order denying the request to remand on the basis that the Complaint sets forth several federal causes of action. The Court simultaneously set a briefing schedule for Defendants' proposed motion to dismiss. The motion to dismiss was filed on January 31, 2019.

**DISCUSSION**

I.   *Rule 12(b)(6) Legal Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57, 127 S. Ct. 1955) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

II. *The Parties Arguments*

Plaintiff sets forth the following four claims: (1) civil conspiracy for fraud; (2) prima facie tort; (3) conspiracy to violate Plaintiff's due process rights; and (4) violations of Plaintiff's "rights under the Civil Rights Act of 1964, as amended in 1983, and the United States Constitution against illegal seizure as well as Plaintiff's Constitutional Right of Due Process under the 14th Amendment to the Constitution of the United States of America[.]" (Compl. [ECF No. 1-1] at 2–7.) Plaintiff also seeks an injunction: (a) directing Defendants to "cease and desist performing any legal transactions to record the deed obtained fraudulently during the fraudulent closing which Defendants alleged took place on May 28, 2018[;]" (b) "[f]orbidding the defendants from taking any legal proceedings in the eviction of the Plaintiff from [the Property] until the final determination of this Court in this litigation and in the ongoing [State

Litigation];" and (c) directing Defendants to serve on Plaintiff's counsel copies of all documentation related to the Defendants' acquisition of the Property from Chase. (*Id.* ¶ 6.)

In their motion to dismiss, Defendants argue that Plaintiff's four claims are barred by the relevant statute of limitations because the disputed action is the original foreclosure of the Property, as opposed to the sale of the Property to Defendants. (Def.'s Mem. in Supp. [ECF No. 17] at 12.) Defendants further argue that Plaintiff has no standing to assert his claims because he has no interest in the Property, and that all of his claims fail as a matter of law.

Plaintiff's memorandum in opposition is puzzling, at best. He does not respond to any of Defendants' arguments in their motion to dismiss, and instead spends the majority of the brief trying to establish that Chase's attorney in another case "collude[d] with [Defendants' attorney] Alan Kaufman solely, with malice toward Plaintiff, in order to interfere with Plaintiff's present suit, in tortuous collusions and intentional tort against Plaintiff[.]" (Pl.'s Opposition [ECF No. at 2.). Apparently these attorneys set forth similar legal arguments in their respective motions to dismiss and included some of the same exhibits related to the earlier foreclosure and eviction proceedings. (*See id.* at 1–2.) Plaintiff also claims that Defendants are in default because they have not filed an answer. Neither of these arguments is persuasive. The fact that Defendants' attorney and Chase's attorney used similar legal arguments does not suggest a broader conspiracy. Even if they did work together, they have every right to do so with their clients' consent, and the Court is unsure how this is relevant to Defendants' motion to dismiss. Furthermore, Defendants have not defaulted by failing to file an answer because they filed a timely request to move pursuant to Rule 12(b). *See* Fed. R. Civ. P. 12(a)(4) (providing that serving a motion under Rule 12 postpones the time to file an answer until 14 days after the court

grants, denies, or postpones disposition of the motion). Accordingly, Plaintiff's request for default judgment is denied.

The Court will now consider each of Plaintiff's claims in turn.

### III. The Motion to Dismiss is Granted

#### A. Conspiracy to Commit Fraud Claim

##### 1. Statute of Limitations

"New York does not recognize civil conspiracy as an independent cause of action." *Reich v. Lopez*, 38 F. Supp. 3d 426, 460 (S.D.N.Y 2014). Rather, a claim for civil conspiracy must be tethered to a separate claim for the underlying tort. *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *see also Guru Kripa Foods, Inc. v. Inter, Inc.*, 2012 WL 3306520, at *9 (E.D.N.Y. Aug. 10, 2012) (finding that there was no cognizable conspiracy to commit fraud claim where no fraud claim was alleged). As such, "[t]he statute of limitations for civil conspiracy is the same as that for the underlying tort." *Murphy v. Morlitz*, 2017 WL 4221472, at *8 (S.D.N.Y. Sept. 21, 2017) (quoting *Brady v. Lynes*, 2008 WL 2276518, at *9 (S.D.N.Y June 2, 2008)) (internal quotation marks omitted). In New York, the statute of limitations for "an action based upon fraud . . . shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. §213(8) (McKinney).

Plaintiff alleges that he became aware of the conspiracy to commit fraud on or around May 28, 2018, when Defendants acquired the Property. Defendants argue that any such conspiracy occurred when the Property was foreclosed on, which they assert was much more than six years before they acquired the Property. On a motion to dismiss, the Court must draw

all factual inferences in Plaintiff's favor. Accordingly, any conspiracy to commit fraud claim arising from Defendants' purchase of the Property in May 2018 is well within the six-year statute of limitations.

      2. Conspiracy to Commit Fraud Legal Standard

To state a claim for conspiracy to commit fraud under New York law, a plaintiff must plead facts showing: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" *Barkley v. United Homes, LLC*, 2012 WL 2357295, at *14 (E.D.N.Y. June 20, 2012) (citing *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009)). However, as alluded to earlier, "[u]nder New York law, civil conspiracy to commit fraud, standing alone, is not actionable . . . if the underlying independent tort has not been adequately pleaded." *Vasile*, 20 F. Supp. 2d at 482.

To plead a fraud claim under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Green v. Sweetworks Confections, LLC*, 2019 WL 3958442, at *7 (S.D.N.Y. Aug. 21, 2019) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2014)).

      3. The Motion to Dismiss is Granted as to Plaintiff's Conspiracy to Commit Fraud Claim

Here, the Court need not consider whether Plaintiff has alleged facts supporting the four elements of a conspiracy to commit fraud claim because Plaintiff has not met the initial requirement of setting forth a fraud claim. *See Guru Kripa Foods, Inc.*, 2012 WL 3306520, at *9. As "New York does not recognize civil conspiracy to commit a tort as an independent cause

of action," Plaintiff has not alleged a cognizable conspiracy to commit fraud claim. *See id.* Even if Plaintiff had endeavored to set forth a cause of action for fraud, which he has not, it would be to no avail because there are no facts alleged that support the elements of a fraud claim. For example, there is no suggestion in the Complaint that Plaintiff relied upon any representation or omission of fact by any of the Defendants. Accordingly, Defendants' motion to dismiss is granted as to Plaintiff's first claim.

B. Prima Facie Tort

1. Statute of Limitations

The statute of limitations for a prima facie tort claim is three years. *McKenzie v. Dow Jones & Co., Inc.*, 255 F. App'x 533, 535 (2d Cir. 2009); *see also Marine Midland Bank, N.A. v. Renck*, 208 A.D. 688, 688 (N.Y. App. Div. 1994). Defendants argue that any prima facie tort occurred when the Property was foreclosed on by Chase. Plaintiff asserts that the prima facie tort occurred on or around May 28, 2018, when Defendants acquired the Property. On a motion to dismiss, the Court must draw all factual inferences in Plaintiff's favor. Moreover, this is a case against Defendants, not against Chase. Accordingly, any prima facie tort claim arising from Defendants' purchase of the Property in May 2018 is well within the three-year statute of limitations.

2. Prima Facie Tort Legal Standard

To state a claim for prima facie tort under New York law, a plaintiff must plead: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017) (citing *Restis v. Am. Coal Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014)). "The first element requires 'disinterested

malevolence,' which means that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Katz*, 241 F. Supp. 3d at 405 (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002)) (internal quotation marks and citations omitted); *see also McKenzie*, 355 F. App'x at 536 ("New York courts have been very strict in holding that a cause of action for prima facie tort will not lie unless the actions complained of can be plausibly said to have been motivated *solely* by malice towards the plaintiff") (emphasis in original). Moreover, special damages—"a critical element of the cause of action—are damages that are alleged with sufficient particularity to identify actual losses and [that are] related causally to the alleged tortious acts." *Barone v. United States*, 2016 WL 2658174, at *4 (S.D.N.Y. May 5, 2016).

      3. The Motion to Dismiss is Granted as to Plaintiff's Prima Facie Tort Claim

Here, Plaintiff has failed to allege facts supporting the first element of a prima facie tort claim; namely, intentional infliction of harm. As explained *supra*, this element requires facts showing that the disputed actions can be plausibly said to have been motivated *solely* by malice towards Plaintiff. *McKenzie*, 355 F. App'x at 536. Here, there are no facts in the Complaint suggesting malice toward Plaintiff. Rather, there is a conclusory statement that Defendants are responsible for an "intentional prima facie tort . . . against Plaintiff, with malice aforethought[.]" (Compl. ¶ 2.) The Court is not required to accept "threadbare recitals of the elements of a cause of action supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Moreover, the allegations certainly do not support an inference that malice toward Plaintiff was the sole reason that Defendants purchased the Property. As Plaintiff himself concedes, the Property was sold for less than half of its alleged market value in a bulk sale. Even construing the facts in Plaintiff's favor, the only alleged facts suggest that Defendants may have purchased the Property, at least in

part, out of economic interest. Accordingly, Defendants' motion to dismiss is granted as to Plaintiff's second claim.

### C. Conspiracy to Violate Plaintiffs' Due Process Rights

#### 1. Statute of Limitations

A § 1985 claim is subject to a three-year statute of limitations. *Pulizotto v. McMahon et al.*, 2019 WL 3997681, at *12 n. 13 (S.D.N.Y. Aug. 23, 2019) (citing *Paige v. Police Dep't of City of Schenectady*, 264 F. 3d 197, 199 (2d Cir. 2001)). "[F]or civil conspiracies including conspiracies to violate an individual's civil rights 'the cause of action accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damages.'" *Pulizotto*, 2019 WL 3997681, at *12 n. 13 (quoting *Allen v Mattingly*, 2011 WL 1261103, at *11 (E.D.N.Y. Mar. 29, 2011)), *aff'd*, 697 428 F. App'x 712 (2d Cir. 2012).

As with Plaintiff's first two claims, Defendants argue that the claim accrued at the time the Property was foreclosed upon, whereas Plaintiff asserts that the violation of his due process rights occurred when Defendants acquired the Property on May 28, 2018. Plaintiff is correct, the claim accrued at the time of the overt act alleged to have caused damages. Accordingly, Plaintiff's claim is well within the three-year statute of limitations period.

#### 2. Section 1985 Legal Standard

Section 1985(3) provides in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Precedent suggests that § 1985(3), which does not have the explicit "state action" language of its counterpart 42 U.S.C. § 1983, permits claims sounding in private conspiracies that concern "the original purpose of the Civil Rights Act." *Alharbi v. Miller*, 368 F. Supp. 3d 527, 567 (E.D.N.Y. 2019) (citing *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 836103 S. Ct. 3352, 77 L.Ed.2d 1049 (1983)).

"To state a cause of action under the deprivation clause of 1985(3), a plaintiff must allege (1) a conspiracy, (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, (3) an overt act in furtherance of the conspiracy, and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Uvidia v. Kohl's Dep't Stores, Inc.*, 2016 WL 5390134, at *6 (E.D.N.Y. Sept. 26, 2016) (citing *Friends of Falun Gong v. Pacific Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003)). A private conspiracy claim under the deprivation clause of § 1985(3) requires: (1) interference with a plaintiff's constitutional rights that are protected against private, as well as official, encroachment; and (2) "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action.'" *Zhang Jingrong v. Chinese Anti-Cult World Alliance*, 311 F. Supp. 3d 514, 551 (E.D.N.Y. 2018) (quoting *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286, 290–91 (2d Cir. 1992)); *Kwas v. Intergraph Gov't Solutions*, 2016 WL 4502039, at *5 (E.D.N.Y. Aug. 24, 2016). A private conspirator must "do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Zhang Jingrong*, 311 F. Supp. 3d at 551 (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278, 113 S. Ct. 753, 122 L.Ed2d 34 (1993)). In other words, [i]n order to allege a private conspiracy, "a plaintiff must show that the defendants entered into some

express or tacit agreement to achieve the unlawful end." *Murray v. New York City Dep't of Corrections*, 2016 WL 11395007, at *10 (E.D.N.Y. Aug. 18, 2016) (quoting *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003)) (internal quotation marks omitted).

>   3. The Motion to Dismiss is Granted as to Plaintiff's Claim for Conspiracy to Violate his Due Process Rights

Here, Plaintiff has alleged that there was a conspiracy between Defendants and Chase for the purpose of illegally seizing his property without due process of law. This supports the first two elements of a § 1985 claim. Plaintiff further asserts that Defendants' acquisition of the Property constituted an overt act in furtherance of the conspiracy. Finally, Plaintiff claims an injury to his property, in that it was allegedly "illegally seiz[ed.]" (Compl. ¶ 7.) As such, although the facts set forth in the Complaint are extremely sparse, they are sufficient to support a claim for a conspiracy pursuant to § 1985(3) at the motion to dismiss stage, setting aside the charged goal of the conspiracy. Which is to say that the Court's inquiry does not end here as Plaintiff has set forth a claim for a private conspiracy. Accordingly, the Court must determine whether the constitutional right in question is protected against private encroachment and whether there was discriminatory animus. In this case, Plaintiff claims that Defendants conspired to violate his due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution. The Due Process clause of the Fifth and Fourteenth Amendments is limited to state actors, and not to private citizens. *Zhang Jingrong v. Chinese Anti-Cult World Alliance*, 287 F. Supp. 3d 290, 303 (E.D.N.Y. 2018) ("the Due Process Clause of the Fourteenth Amendment, 'protects the individual against state against, not against wrongs done by individuals . . . where a plaintiff seeks to enforce a right under § 1985(3) which by definition, requires state interference, state involvement must be demonstrated") (internal citations omitted); *see also Johnson v. Nextel Communications, Inc.*, 763 F. App'x 53, 57 (2d Cir. 2019) (holding

that the district court was correct in finding that a due process claim against a private party was not viable under § 1985(3)).

Plaintiff has not alleged any facts suggesting that Defendants are state actors – rather Plaintiff only indicates that the Defendants acted "in concert and in a conspiracy being designed and urged, specifically by [] Chase[.]" (Compl. ¶ 5.) Nor does Plaintiff even claim that Defendants or Chase are state actors. As Plaintiff's due process rights are not protected under the U.S. Constitution against private encroachment, Plaintiff has not alleged facts in support of a private conspiracy in violations of § 1985(3). Defendants' motion to dismiss is granted as to Plaintiff's third claim.

### D. The Motion to Dismiss is Granted as to Plaintiff's Civil Rights Claim

#### 1. Statute of Limitations

The statute of limitations for civil rights actions arising in New York is three years. *Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 295 (S.D.N.Y. 2011); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 79–80 (2d Cir. 2002). "[A]ccrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Peal*, 296 F.3d at 80.

As with Plaintiff's other claims, Defendants argue that any civil rights claim accrued at the time the Property was foreclosed upon by Chase, whereas Plaintiff asserts that the violation of his civil rights accrued when Defendants acquired the Property on May 28, 2018. The Court agrees with Plaintiff that the alleged civil rights claim against Defendants accrued on or about May 28, 2018, or as soon thereafter as Plaintiff had reason to know that Property was sold to Defendants. Accordingly, Plaintiff's claim is well within the three-year statute of limitations period.

1. The Motion to Dismiss is Granted as to Plaintiff's Civil Rights Claim

Plaintiff's final federal claim is for violations of "his rights under the Civil Rights Act of 1964, as amended in 1983,[3] and the United States Constitution against illegal seizure as well as Plaintiff's Constitutional Right of Due Process under the 14th Amendment to the Constitution of the United States of America[.]" As an initial matter, this Court has already explained that Plaintiff's due process rights under the 14th Amendment are not protected from private action, and there are no allegations of state action here. Accordingly, any Fourteenth Amendment claim fails as a matter of law.

Regarding the remaining claim, Plaintiff does not provide any specific information about the alleged violations of his civil rights in either the Complaint or his Memorandum in Opposition. Nor does Plaintiff specify under which section of the Civil Rights Act of 1964 he brings this action, or which provision(s) of the Civil Rights Act of 1964 extend to real property or seizure. The extent of his claim is that Defendants violated his rights under the Civil Rights Act against "illegal seizure." Furthermore, Plaintiff does not provide any authority in support of this claim. Based on the Court's own research, there are no decisions in the Second Circuit or the Supreme Court that have considered an "illegal seizure" under the Civil Rights Act of 1964, except in the context of the Fourth Amendment. To the extent that Plaintiff does seek to make an illegal seizure claim under the Fourth Amendment, the Civil Rights Act of 1964 is "'not intended to remedy instances of unreasonable . . . seizures that occurred 'in violation of the Fourth Amendment.'" *Forbes v. City of New York*, 2018 WL 1882842, at *3 (E.D.N.Y. Apr. 19, 2018) (quoting *McClanahan v. Kelly*, 2014 WL 1317612, at *2 n.3 (S.D.N.Y. Mar. 31, 2014)).

---

[3] The Court is unsure as to what amendments Plaintiff is referring to in the Complaint.

The Court's searches for decisions concerning real property and the Civil Rights Act of 1964 were similarly fruitless.

If Plaintiff in fact meant to make a claim for violations of § 1983 when he referred to the "amend[ments] in 1983," this claim would fail as a matter of law because § 1983 only applies to defendants who acted under color of state law. *Lynch v. Southampton Animal Shelter Foundation, Inc.*, 971 F. Supp. 2d 340, 348 (E.D.N.Y. 2013) (quoting *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)). As discussed above, there are no allegations in the Complaint suggesting that Defendants acted under color of state law, nor does Plaintiff assert elsewhere that they did. "It is not the Court's job to guess what a party means to say, or to imagine" all claims they might raise, and the Court has already done more than is required for a party that is represented by counsel. *See Suarez v. Big Apple Car, Inc.*, 2017 WL 9400686, at *2 (E.D.N.Y. Dec. 1, 2017). As Plaintiff has not stated a cognizable claim for violations of the Civil Rights Act of 1964, the motion to dismiss is granted as to such claim.

E. The Court Denies and Declines to Exercise Jurisdiction Over Plaintiff's Requests for Injunctions

As described above, Plaintiff asks this Court to: (1) direct Defendants to cease and desist performing any legal transactions to record the deed to the Property; (2) forbid Defendants from taking any legal proceedings in evicting Plaintiff; and (3) direct Defendants to give Plaintiff's counsel copies of all documents related to Defendants' acquisition of the Property. (Compl. ¶ 6.) With regards to the second request for relief, the Court is barred from enjoining a state-court eviction proceeding by the Anti-Injunction Act. *Kristopher v. Stone Street Properties, LLC*, 2013 WL 499752, at *3 (S.D.N.Y. Jan. 29, 2013); *see also Allen v. New York City Housing Auth.*, 2010 WL 1644956, at *3 (S.D.N.Y. Apr. 20, 2010) (citing *Bosch v. Lamattina*, 2008 WL 4820247, at *1, 8 (E.D.N.Y. Nov. 4, 2008)); *O'Neill v. Hernandez*, 2008 WL 2963634, at *1

(S.D.N.Y. Aug. 1, 2008) ("[T]he Anti-Injunction Act bars this Court from enjoining Plaintiff's eviction proceedings"); *Baumgarten v. Cty. of Suffolk*, 2007 WL 1490482, at *4–5 (E.D.N.Y. May 15, 2007) (denying the plaintiff's request for a preliminary injunction because the Anti-Injunction Act barred the Court from entering an injunction prohibiting Plaintiff's eviction).

As to the first and third requests, the Court declines to grant such relief. Preliminarily, Plaintiff has failed to provide any authority in support of his position that he is entitled to such relief or that the Court has the jurisdiction to so order it. Moreover, as all Federal claims have been dismissed, there is no longer any basis for federal jurisdiction in this action. Pursuant to 28 U.S.C. § 1367(c)(3), the Court, "may decline to exercise supplemental jurisdiction" over a state law claim when the Court "has dismissed all claims over which it has original jurisdiction." The Second Circuit has also emphasized that when "federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *See Klein & Co. Futures, Inc. v. Bd. of Trade of the City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). As this matter is in the early stages of litigation, the Court declines to exercise jurisdiction over these final two requests for injunctive relief.

F. *Rooker-Feldman* Doctrine

To the extent that Plaintiff is actually challenging the foreclosure sale of the Property and the eviction order, his claims are barred by the *Rooker Feldman* doctrine. This doctrine provides that federal courts may not adjudicate claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See, e.g., Campbell v. Bank of America, Nat'l Ass'n, et al.*, 2019 WL 4083078, at *3–5 (S.D.N.Y. Aug. 29,

2019) (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (internal quotation marks omitted).  Each of Plaintiff's four claims, as well as his request for an injunction, seem to effectively challenge the underlying foreclosure and eviction.  Thus, the *Rooker-Feldman* doctrine is an independent basis for dismissing the entire matter.

**CONCLUSION**

The Court reiterates that Plaintiff was given an opportunity to amend his Complaint with Defendants' consent during a telephone conference, and counsel declined to do so.  For the foregoing reasons, Defendants' Rule 12(b)(6) motion to dismiss is granted.  Plaintiff's second request for an injunction fails as a matter of law and the Court declines to exercise jurisdiction over Plaintiff's remaining injunction requests.  Plaintiff's request for default judgment is likewise denied.  Finally, Plaintiff's request for sanctions is denied as the motion to dismiss clearly was not frivolous given that it was granted in its entirety.  Defendants' request for attorney's fees should be filed as a separate motion, by way of a request for a pre-motion conference.  The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
September 20, 2019

/s/
Denis R. Hurley
United States District Judge